(No. 45599.

ROBERT L. TITUS, JR., Appellee, v. THE TEXAS COMPANY et al., Appellants.

Opinion filed Sept. 25, 1973.—Rehearing denied Nov. 29, 1973.

WILLIAM J. SCOTT, Attorney General, of Springfield (PAUL J. BARGIEL and A. ZOLA GROVES, Assistant Attorneys General, of counsel), for appellants.

GALE L. MARCUS, of Chicago, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This appeal concerns the constitutionality of that portion of section 2 of the Motor Fuel Tax Act (Ill. Rev.

Stat. 1971, ch. 120, par. 418) which imposes a tax on the privilege of operating a motor vehicle on the waters of the State of Illinois at a specified rate per gallon of gasoline used. The action was brought in the circuit court of Cook County by the plaintiff, Robert L. Titus, Jr., on his own behalf, and on behalf of all other owners or operators of boats who are charged the motor fuel tax on their purchases of gasoline for marine use. The defendants are George E. Mahin, the Director of the Department of Revenue of the State of Illinois, and Alan J. Dixon, the Treasurer of the State of Illinois. The trial court heard evidence and held that the challenged portion of section 2 unreasonably discriminated between operators of gasoline-powered boats and operators of diesel-powered boats, and therefore violated the equal-protection clause of the fourteenth amendment to the United States constitution and the uniformity provision of section 1 of article IX of the Illinois constitution of 1870. The court ordered that taxes paid on gasoline used by boaters be deposited in a protest fund, and the court retained jurisdiction to supervise the refund of taxes collected after the commencement of the action. The defendants appealed directly to this court under Rule 302(a).

Section 2 of the Motor Fuel Tax Act provides:

> "A tax is imposed on the privilege of operating motor vehicles upon the public highways *and the waters* of this State, at the rate of 7½ cents per gallon of all motor fuel used in such motor vehicles upon such public highways *and all gasoline used in such motor vehicles upon such waters.*" (Italics added.) Ill. Rev. Stat. 1971, ch. 120, par. 418.

The italicized portion was added by a 1963 amendment (Laws of 1963, p. 2599), and it is that portion of the statute which the plaintiff attacks and which the circuit court held unconstitutional. By this statute the legislature has set apart those boats that use gasoline for fuel from those that use diesel or electric power, as well as from sailboats, rowboats and canoes.

The same 1963 act that amended section 2 of the Motor Fuel Tax Act also amended section 8 of that act (Ill. Rev. Stat. 1963, ch. 120, par. 424) to require that a specified amount of money be transferred each month from the Motor Fuel Tax Fund to the State Boating Act Fund "to be used by the Department of Conservation for the purposes specified in Article X of the 'Boat Registration and Safety Act'." Those purposes are the following: "*** the expenses of the Department in administering the registration, boat safety, boat safety education and enforcement provisions of this Act or for any purpose related or incident thereto and connected therewith, including the construction and improvement of boating facilities, such as access areas, launching sites, harbor facilities, lakes and marinas, including plans and specifications, engineering surveys and supervision and land acquisition where necessary." Ill. Rev. Stat. 1971, ch. 95½, par. 320—1.

Kenneth Gruenewald, the Boating Administrator for the Department of Conservation, testified that most of the expenditures by the Department are for the construction of access areas for the launching of small motorboats. These areas generally consist of a launching ramp, a parking area, restrooms, facilities to provide drinking water for use on boats, and sometimes a picnic and camping area. The fund is also used, among other things, for a boating safety education program, for the zoning of public waters for various uses, and to pay the salaries of 45 inspectors who check to see that the boats using Illinois waters have the equipment that is required under State and Federal law and who enforce the provisions of the Boat Registration and Safety Act. Ill. Rev. Stat. 1971, ch. 95½, par. 311—1 *et seq.*

Gruenewald further testified that the State's boating program is designed for the power boater who transports his vessel over the highways to the access areas by means of a trailer. Because a special permit is needed to transport a boat in excess of 20 feet in length on the highways of the

State, the access areas are used primarily by boaters whose vessels do not exceed that length, and witnesses for both sides agreed that all motorboats of this size are powered by gasoline engines. Diesel-powered craft become economically feasible only at a minimum length of 30-32 feet. Sailboat owners are generally unable to use the launching ramps and parking areas because the size of their vessels makes it difficult to transport them on the highways.

Gruenewald testified that at some of the facilities there is a dock at which diesel-powered boats and sailboats could tie up and let passengers and crew disembark to use the restrooms, picnic area, and water facilities, but he stated that as a practical matter these vessels do not do so. The larger boats, which are the ones that use diesel power, have their own sanitary facilities, and carry their own water supply and cooking equipment. He added that cyclists, hikers and persons driving automobiles could likewise avail themselves of these facilities, and that some of the State-built access areas are located on waterways on which diesel-powered boats cannot operate. He also testified that the Department's boating safety education and inspection programs are not limited to gasoline-powered boats.

Evidence was also presented to establish the number of diesel-powered boats that use Illinois waters. Larger vessels, those displacing at least five net tons, a class that includes only boats that are at least 30 feet in length, can register with either the United States Coast Guard or the State. A letter from the Chief of the Records and Publications Branch of the Merchant Vessel Documentation Branch of the Coast Guard was received in evidence, and it stated that as of September 1, 1971, 279 of the 1723 pleasure craft registered with it as being home-ported in Chicago were propelled by oil. In addition, a list showing the following breakdown of boats registered with the State of Illinois in 1971 was introduced:

Although the chart does not indicate whether a particular vessel is powered by a gasoline engine or a diesel engine, it was established that because of their size none of the 123,806 boats listed in Class A, under 16 feet, could be diesel powered, and Gruenewald testified that in his opinion none of the 53,324 boats listed in Class I, 16-26 feet, could be diesel powered. The plaintiff agreed that it would not be feasible from an economic and safety standpoint to have a diesel engine in such a small vessel. It was also established that none of the boats listed in the three remaining classes that had outboard motors could be diesel powered. Thus, at least 179,601 out of 182,066 motorboats registered with the State or with the Coast Guard as being home-ported in Chicago are surely not diesel powered.

Various estimates were given by witnesses as to the number of diesel-powered vessels in the three remaining classes, but even if we assume that all such boats with inboard motors are diesel powered, and this is clearly not the case, the result, when combined with the Coast Guard figures, would amount only to 2,186 boats out of a total of 182,066 registered motorboats, or 1.2% of the total. Some large sailboats may have diesel-powered auxiliary engines, but their number would not be significant.

1. Sail:—Total 4,217

2. Motorboat:

| Class | Outboard | Inboard | Total |
|---|---|---|---|
| A. (Under 16 ft.) | 122,292 | 1,514 | 123,806 |
| I. (16-26 ft.) | 41,915 | 11,409 | 53,324 |
| II. (26-40 ft.) | 964 | 2,038 | 3,002 |
| III. (40-60 ft.) | 63 | 147 | 210 |
| IV. (over 60 ft.) | | 1 | 1 |
| 3. Total Numbers | 165,234 | 15,109 | 180,343 |

In addition to these facts disclosed by the record, we take judicial notice of the fact that facilities of the kind

provided by the State under section 1 of article X of the Boat Registration and Safety Act (Ill. Rev. Stat. 1971, ch. 95½, par. 320–1) have been constructed in the harbors on Lake Michigan by the Federal government, by local governmental bodies, or by both. (See, Ill. Rev. Stat. 1971, ch. 105, par. 333.15; *MacNeil v. Chicago Park District (1948), 401 Ill. 556.*) None of the proceeds of the tax here involved was expended in the construction or maintenance of these facilities.

Under the decisions of the Supreme Court of the United States and this court, differential treatment for purposes of taxation can withstand constitutional attack so long as the classifications are reasonable. (*Lehnhausen v. Lake Shore Auto Parts Co. (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001; Thorpe v. Mahin (1969), 43 Ill.2d 36, 45-46*; see also, Ill. Const. (1970), art. IX, sec. 2.) Moreover, a classification must be upheld if any state of facts reasonably can be conceived that would sustain it. *Department of Revenue v. Warren Petroleum Corp. (1954), 2 Ill.2d 483, 489-90.*

The classifications created by the statute are not precise, since some persons who have large, gasoline-powered boats cannot use some of the facilities built by the State but must still pay the tax, while some persons who are not taxed receive some of the benefits of the State's program. But absolute precision is not required in establishing classifications for tax purposes. (*Mutual Tobacco Co. v. Halpin (1953), 414 Ill. 226, 234.*) And the fact that the tax is on the privilege of using the "waters" of the State must be realistically considered.

We hold that the statutory classification is not unreasonable. The legislature could have intended to tax those boaters for whose benefit the State's boating program is primarily designed. It could have concluded that a tax on the marine use of diesel fuel would produce little revenue above the costs of collection and administration and that, as to sailboats, no method exists for

measuring their use of the waterways. Such considerations furnish a justification for legislative classification. *Department of Revenue v. Warren Petroleum Corp. (1954), 2 Ill.2d 483; People v. Deep Rock Oil Corp. (1931), 343 Ill. 388, 399.*

As the trial court found, "the Department of Conservation at present utilizes the Motor Fuel Tax Fund principally for the construction and improvement of facilities more usable by small craft using gasoline fuel." Whether, as the trial court speculated, "it may reasonably be expected that within the future other facilities may be constructed in navigable waters or areas which may serve diesel powered boats as well," is not, in our opinion, a determinative consideration.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*