ROY L. FORSBERG *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division) Nos. 84—1223, 84—1230, 84—1234, 84—1349 cons.

Opinion filed November 26, 1986.—Rehearing denied January 8, 1987.

356

Ronald J. Clark, of Chicago, for appellant Chicago Yachting Association.

Joseph S. Wright, Jr., and Nicholas J. Nedeau, both of Martin, Craig, Chester & Sonnenschein, Bernard Wiczer and Fred R. Harbecke, both of Wiczer & Associates, and Craig E. Anderson, Lowell H. Jacobson, Allen D. Choka, and Herbert I. Rothbart, all of Chicago, for other appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein, Lynn K. Mitchell, and Joseph A. Moore, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs filed four separate actions against defendants, the city of Chicago and its various officers, challenging the constitutionality of the Chicago boat-mooring tax. Plaintiffs appeal from trial court orders dismissing their actions on various grounds. The four actions were consolidated on appeal.

The mooring tax was enacted by the Chicago city council December 27, 1983, and was to be effective January 1, 1984. It reads, in relevant part:

> "200.8—2.A. A tax is hereby imposed upon any watercraft moored or docked for a fee in any harbor, river or other body of water within the corporate limits or jurisdiction of the City of Chicago, *** at a rate of 50% of such mooring or docking fee. *** The tax herein shall be due by March 1 of each calendar year for mooring or docking fees paid by February 1 of such year for the right to moor or dock said watercraft in said year. For any mooring or docking fee paid after February 1 of any year for the right to moor or dock said watercraft in said year, the tax herein shall be due within 30 days of the payment of said fee. ***"

> "200.8—6.B. The tax imposed herein shall not apply to any watercraft, its owner, operator or person in possession to the extent the imposition of this tax upon such would violate the Constitution of the United States or the State of Illinois. ***"

> "200.8—6. Whenever it appears to any person that he should not be required to pay any tax imposed herein he may file a protest along with his payment and request a hearing. A hearing shall, thereafter, be provided by the Director ***. ***"

"200.8—8. Any person found guilty of violating, disobeying, neglecting or refusing to comply with any of the provisions of this Chapter, except as otherwise provided, upon conviction shall be punished by a fine of not less than $50.00 nor more than $100.00 for each offense in any 180-day period, provided, that all actions seeking the imposition of fines only shall be filed as quasi-criminal actions subject to the provisions of the Illinois Code of Civil Procedure \*\*\*. Repeated offenses in excess of three within any 180-day period may also be punishable as a misdemeanor by incarceration in the County Jail for a term not to exceed six months under the procedures set forth in section 1—2—1.1 of the Illinois Municipal Code \*\*\* and under provisions of the Illinois Code of Criminal Procedure \*\*\* in a separate proceeding." (Chicago Municipal Code ch. 200.8 (1984).)

In *Forsberg v. City of Chicago,* on January 12, 1984, plaintiffs Roy L. Forsberg, John L. Reynertson, Gary V. Banser, Roy Laufter, Joseph Black, and Russ Mills filed a class action on behalf of the named plaintiffs and all persons paying the mooring or docking fee upon which the tax is based against defendants, the city of Chicago and Charles Sneider, the director of revenue for the city. Plaintiffs sought a declaratory judgment that the tax was unconstitutional and invalid, and sought injunctive and other relief. On February 10, 1984, the trial court entered agreed orders certifying the class, approving lead counsel, preliminarily enjoining the city from imposing penalties for nonpayment of the tax, and establishing a mooring tax escrow account. On February 15, 1984, those orders were vacated. On February 21, 1984, a mooring tax escrow account was established. On February 22, 1984, the city was enjoined from collecting the tax. On May 16, 1984, the trial court ordered that a new mooring tax escrow account be established.

After hearings on defendants' motion to dismiss, the trial court made specific findings. The trial court found that the mooring tax was not beyond the territory or jurisdiction of the city, that the tax was not a tax on the Chicago Park District or its property, that the tax is not a license fee on the Chicago Park District, and that the tax does not violate any portion of the Illinois Constitution as to the authority of the city to tax or as a power not given to a home rule unit. The trial court found further that the tax is not a tax on an occupation, that the tax is not a discriminatory tax as to a group to which it applies and meets the test of uniformity, that the tax is not licensing for revenue, and that the tax is not a special tax on one group for the benefit of others any more than any other valid city tax which falls on

some citizens and not others. The trial court also found that the taxpayers are not, under this ordinance, deprived of property without due process and a specific provision in the ordinance relates to protests and hearings, that the tax is not indefinite or ambiguous, that the tax is not a tax on the use of navigable waters or on interstate commerce, and that while a large portion of the base of the tax apparently does not benefit boat owners, this does not invalidate the tax because the remedy for boat owners is to attack the Chicago Park District mooring fees in another action. The trial court also found that the definitions of the boundaries of the city and its jurisdiction are adequately met by the ordinance, coupled with existing statutes and cases; that the tax is not *ultra vires* of the city and is within the power of the city; and that any other ground of the complaint was without merit.

The trial court granted defendants' motion to strike and dismiss the complaint with prejudice in *Forsberg* pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). In addition, plaintiffs' oral motion for leave to file an amended complaint and pending motion for class certification were denied, and all pending and further discovery was barred. The trial court ordered that for the year 1984, the tax would be due on June 1, 1984, for any mooring or docking fee paid before February 1, 1984. For any mooring or docking fee paid on or after February 1, 1984, the tax would be due June 1, 1984, or 30 days after the mooring or docking fee was paid, whichever date was later. Penalties under the ordinance would be effective after June 1, 1984. Beginning January 1, 1985, all provisions of the ordinance would be in effect as passed by the Chicago city council. The city was permanently enjoined from changing in any way any portion of the tax ordinance, except through appropriate action by the city council. The injunction against the city from collecting the tax was lifted. Finally, the court noted that a mooring tax escrow account for segregating tax funds received under the ordinance was established under a separate order dated May 16, 1984. On May 31, 1984, this court stayed the enforcement and collection of the tax, pending this appeal. On appeal, plaintiffs in *Forsberg* contend that the trial court erred in dismissing the complaint, erred in denying plaintiffs' motion to amend the complaint, and erred in denying plaintiffs' motion for class certification.

In *Lynch v. City of Chicago,* on January 17, 1984, plaintiffs John J. Lynch and Joseph S. Wright, Sr., filed a class action on behalf of commercial and pleasure-vessel boat owners. On May 18, 1984, the trial court dismissed the complaint in *Lynch.* On appeal the plaintiffs

in *Lynch* contend that the mooring tax is unconstitutional for several reasons.

In *Chicagoland Boat Owners Association v. City of Chicago,* on February 10, 1984, the Chicagoland Boat Owners Association (CBOA) and four individually named plaintiffs, Leon M. Delano, Jr., Kipp M. Webb, John D. Hirn, and Melvin Bechina, filed suit against defendants, the city of Chicago, and its director of revenue, its treasurer, its controller, and its mayor, seeking declaratory and injunctive relief.

On May 18, 1984, the trial court granted defendants' motion to strike and dismiss plaintiffs' amended complaint. The court found that the CBOA had no standing to challenge the mooring tax and that pursuant to section 2—615(a)(3) of the Code of Civil Procedure, the class action and individual plaintiffs' actions were barred by prior pending actions. On appeal, plaintiffs in *CBOA* contend that the trial court erred in finding it had no standing to challenge the mooring tax and that the trial court erred in finding that plaintiffs' actions were barred by prior pending actions.

In *Chicago Yachting Association v. City of Chicago,* on January 20, 1984, the Chicago Yachting Association (CYA) filed suit against defendants, the city of Chicago, its director of revenue, and the Chicago Park District, seeking declaratory and injunctive relief. (Subsequently, the Chicago Park District was allowed to become realigned as a party plaintiff. It filed its own suit against the city of Chicago, alleging that the tax is an unconstitutional interference with its grant of authority to provide recreational harbors at a reasonable fee. Its request for preliminary relief was denied, and that judgment was affirmed by this court and by our supreme court. *Chicago Park District v. City of Chicago* (1984), 127 Ill. App. 3d 215, 468 N.E.2d 1261, *aff'd* (1986), 111 Ill. 2d 7, 488 N.E.2d 968.

On May 18, 1984, the trial court granted defendants' motion to strike and dismiss the CYA's complaint. The court found that the CYA had no standing to challenge the mooring tax and that pursuant to section 2—615(a)(3) of the Code of Civil Procedure, the action was barred by prior pending actions. The CYA's petition for leave to amend its complaint was denied. On appeal, the CYA contends that the trial court erred in finding it had no standing to challenge the mooring tax and that the CYA's action is not barred by prior pending actions.

We first address the issues raised in *Forsberg,* some of which are also raised in *Lynch.* Plaintiffs in *Forsberg* argue that the city of Chicago has no jurisdiction over the property or activities of the Chicago Park District. In *Chicago Park District v. City of Chicago* (1986), 111

Ill. 2d 7, 488 N.E.2d 968, our supreme court held that the city has the authority under the constitution to impose the mooring tax.

██ █ Plaintiffs in *Forsberg* contend next that the tax is an attempt by the city to levy an extraterritorial tax because it is assessed against boat owners or users who are not necessarily residents of Chicago. A home rule unit may exercise any power and perform any function pertaining to its government and affairs, including the power to tax. (Ill. Const. 1970, art. VII, sec. 6(a).) The power to tax is broad and an exercise of that power is valid unless the power is restricted by a constitutional provision or appropriate legislation. (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, *cert. denied* (1976), 425 U.S. 916, 47 L. Ed. 2d 768, 96 S. Ct. 1518.) Moreover, powers and functions of home rule units shall be construed liberally. (Ill. Const. 1970, art. VII, sec. 6(m).) A local unit of government is not exercising its taxing powers extraterritorially when it collects a tax from persons located outside the boundaries of the local unit, but who do business within those boundaries. (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6.) Moreover, it cannot be said that nonresidents of a home rule unit could never be subjected to taxes by that unit. Services rendered within the city may be taxed. (See *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) In the present case, the city has authority to enact an ordinance imposing a boat mooring tax within the city limits. (*Chicago Park District v. City of Chicago* (1986), 111 Ill. 2d 7, 488 N.E.2d 968.) The tax is not extraterritorial where it is imposed on persons who may reside outside of Chicago, but who enter Chicago harbors, use Chicago facilities, and pay mooring or docking fees in Chicago.

Plaintiffs maintain that the taxing activities of the Park District do not pertain to the government and affairs of Chicago and that the tax violates the taxing powers of the city and exceeds the authority of a home rule municipality. Plaintiffs in *Lynch* also contend that the tax exceeds the city's home rule authority. We find those arguments unpersuasive in view of our supreme court's holding in *Chicago Park District,* that the city, a home rule unit, has the authority to impose the mooring tax.

█ Plaintiffs in *Forsberg* contend further that the tax ordinance discriminates against individuals who pay a mooring fee within the calendar year, which is an arbitrary classification which voids the entire tax. This argument is being raised for the first time on appeal and therefore is waived. *City of Urbana v. Burgess* (1976), 40 Ill. App. 3d 244, 351 N.E.2d 607.

█ Plaintiffs in *Forsberg* contend that the tax is imposed on the

affairs of the Park District. Plaintiffs point out that the relevant statute states that the harbor is owned and operated by the Park District and is exempt from taxation. (Ill. Rev. Stat. 1983, ch. 105, pars. 333.23n, 333.23p.) The tax ordinance, however, is not on the harbor or the Park District. Instead, the tax is on its patrons. Plaintiffs maintain that the real effect of the tax is to tax the Park District. As the supreme court stated in *Chicago Park District v. City of Chicago* (1986), 111 Ill. 2d 7, 488 N.E.2d 968, the city is simply taxing an event which occurs within its boundaries and in an area for which it provides services. In further support of their argument, plaintiffs state that *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399, should have no bearing on the validity of the mooring tax. "The most that can be said for the holding in *Peoria* is that it stands for the proposition that incidental impositions of burdens upon local park districts can be countenanced." Plaintiffs argue that a 50% tax cannot be considered incidental. In *Chicago Park District,* however, the supreme court relied on *City of Peoria* and found that the reference to "incidental burdens" in that case was not to the amount of the tax, but rather to the question of tax collection.

■ Plaintiffs in *Forsberg* next contend that the tax ordinance is indefinite and ambiguous because "jurisdiction" is too broad a term and "moored" and "docked" are too vague. Plaintiffs also maintain that the same defect is found in the requirement that the tax be based on the "consideration paid for the mooring or docking \*\*\* valued in money, whether received in money or otherwise." Plaintiffs argue that it is not clear how the nonmonetary consideration for the docking is to be considered.

The rules of construction which apply to statutes also apply to ordinances. (*Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 488 N.E.2d 644.) Each term used in an ordinance need not be specifically defined, nor can the exact application of the ordinance to every factual situation be delineated. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204.) A word or phrase not defined in an ordinance will be given its ordinary meaning. (*City of Chicago v. Pennsylvania R.R. Co.* (1968), 41 Ill. 2d 245, 242 N.E.2d 152.) All reasonable doubts regarding the construction of an ordinance must be resolved in favor of its constitutionality. *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204.

■ The individual terms complained of here are commonly used in other Illinois statutes without definition. (See, *e.g.,* Ill. Rev. Stat. 1983, ch. 95½, par. 311—3 (Boat Registration and Safety Act); ch. 105, par. 333.23n (Park District's power as to harbors); ch. 24, par.

7—4—1 (power to enact health and quarantine ordinances).) "Mooring" means securing one's boat. The term "jurisdiction" is specifically referred to in the ordinance with regard to harbors, rivers, or other bodies of water within Chicago. We cannot say these terms are so indefinite as to violate constitutional principles. Finally, the valuation of nonmonetary consideration must be determined on a case-by-case basis. Such terminology is used without definition in many Illinois statutes. (See, *e.g.,* Ill. Rev. Stat. 1983, ch. 120, par. 439.2 (use tax); ch. 120, par. 439.32 (service use tax); ch. 120, par. 439.102 (service occupation tax); ch. 120, par. 440 (retailers' occupation tax).) Thus, upon examination of the ordinance, we find that there is no basis to anticipate undue difficulty in applying its provisions. Where ordinances contain general language, the variety of interpretations suggested is limited only by the ingenuity of counsel who attack the language. Should a situation present itself where deprivation of due process results, the matter can be adjudicated at that time. See *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3.

■ Plaintiffs in *Forsberg* next contend that the size of the tax and the "draconian" civil and criminal penalties imposed violate due process requirements. Plaintiffs rely on article VII, section 6(e), of the Illinois Constitution, which states that "a home rule unit shall have only the power that the General Assembly may provide by law *** to punish by imprisonment for more than 6 months." (Ill. Const. 1970, art. VII, sec. 6(e).) Plaintiffs maintain that the penalties are disproportionate to the offense of not paying the tax. Section 200.8—8 of the ordinance provides for notification of each offense. Section 200.8—6 provides for a taxpayer's filing of a protest and provides for a hearing. That section also provides that all actions seeking the imposition of fines will be quasi-criminal actions. Section 200.8—6 also states that any jail term cannot exceed six months. The legislature's power to impose penalties to aid administration and insure collection of taxes has long been uniformly recognized. (*Department of Revenue v. Shore Line Petroleum Co.* (1955), 7 Ill. 2d 186, 130 N.E.2d 203.) Furthermore, the nature, character, and extent of penalties are wholly legislative, notwithstanding a court's finding that the penalties are absurd. (*People v. Landers* (1927), 329 Ill. 453, 160 N.E. 836.) The penalties are void only if they are so disproportionate to the offense as to shock the conscience of reasonable persons. (329 Ill. 453, 160 N.E. 836.) We cannot say that the penalties here are so disproportionate to the offense to shock the conscience of reasonable persons. Similar penalties are contained in other municipal tax ordinances. (See, *e.g.,* Chicago Municipal Code ch. 200.3, sec. 3—11 (Chicago Employ-

ers' Expense Tax); ch. 156.1, sec. 1—10 (Chicago Parking Lot and Garage Tax); ch. 200.6, sec. 6—21 (Chicago Sales Tax).) In addition, the penalties here are limited to six months' imprisonment, as mandated in the Illinois Constitution.

■ Plaintiffs in *Forsberg* next contend that the tax is discriminatory, unreasonable, and nonuniformly imposed. Plaintiffs argue that only boat users who moor or dock their boats for a fee are taxed; that those who own their own moorings escape taxation; that those who do not moor or dock their boats but use other maritime facilities such as land storage are not taxed; that nonresidents are charged 25% more than residents; that many boat owners receive no services or benefits from the city; and that those paying fees to entities other than the Park District will probably be taxed at a different rate.

In taxation, legislatures possess the greatest freedom in classification. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001, *rehearing denied* (1973), 411 U.S. 910, 36 L. Ed. 2d 200, 93 S. Ct. 1523.) The legislature has very broad powers, therefore, to establish classifications defining objects of taxation. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 403.) The classification is constitutional if it is reasonable. (66 Ill. 2d 423, 362 N.E.2d 1030.) It is sufficient if any state of facts may reasonably be conceived to justify the classification. (66 Ill. 2d 423, 362 N.E.2d 1030.) There is a presumption that the classification is valid, and the burden of establishing the unreasonableness of the tax classification rests on plaintiffs. (*Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 292 N.E.2d 401.) Plaintiffs must negate every conceivable basis which might support the tax classification. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001; *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.) The presumption of constitutionality can be overcome only by the most explicit demonstration that the classification is a hostile and oppressive discrimination against particular persons and classes. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) The reasons justifying the classification need not appear on the face of the statute. *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.

In the present case, the city council was permitted to define a subclass without imposing a tax on the general class of all boat owners. (See *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698.) The classification distinguishes between persons entering into a commercial transaction in which consideration is exchanged for mooring and

persons not entering into such a transaction because they own mooring facilities or receive the facilities as a gift. Persons who, *e.g.*, store boats on shore are involved in a different type of activity. (See *Titus v. Texas Co.* (1973), 55 Ill. 2d 437, 303 N.E.2d 361.) Absolute precision is not required in establishing classifications. (55 Ill. 2d 437, 303 N.E.2d 361.) Moreover, it may be administratively more convenient to tax those who pay a Park District fee because the Park District maintains records and thus the usual difficulty in monitoring the collection of taxes from these mobile boats is eliminated. This, and other administrative advantages, may be a proper basis for the classifications here. See *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.

As discussed below, we will not address the 25% surcharge here. In regard to the argument that boat owners receive no services from the city, we note that not all persons burdened by a tax must be benefited in the same way. (See *Kocsis v. Chicago Park District* (1935), 362 Ill. 24, 198 N.E. 847.) Plaintiffs' argument that others might be taxed at a different rate is conclusory, and this court will not render an advisory opinion on this hypothetical set of facts.

■ Plaintiffs in *Forsberg* next contend that the mooring tax is a prohibited license for revenue. Article VII, section 6(e), of the Illinois Constitution provides that a home rule unit shall only have the power that the General Assembly may provide by law to license for revenue. Plaintiffs argue that the size of the tax alone proves that the purpose of the tax is to raise revenue. In *Chicago Park District*, the court held that the size of the tax is a matter to be determined by the legislature, not the courts. The court refused to find that the 50% tax was an unreasonable burden, holding instead that it was for the General Assembly to consider possible abuses of home rule power. Furthermore, a license for revenue is an attempt by a governmental unit, which does not have the power to tax, to use its police power to raise revenue. (*Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3.) In *Chicago Park District*, the supreme court held that the city of Chicago has the home rule authority to impose this mooring tax. Thus, the tax is imposed pursuant to the city's valid taxing power and is not an attempt to use its police power to raise revenue.

■ Plaintiffs in *Forsberg* and *Lynch* contend that the mooring tax is a tax on navigable waters and a burden on interstate commerce. Congress' control over interstate commerce includes supreme authority over navigable waters. (*People ex rel. Cornell Steamboat Co. v. Sohmer* (1915), 235 U.S. 549, 59 L. Ed. 355, 35 S. Ct. 162.) The charge here, however, is on a commercial transaction within the city,

not upon the navigation of waters. (See 235 U.S. 549, 59 L. Ed. 355, 35 S. Ct. 162.) The mooring tax does not restrict movement upon navigable waters. (See *Reinhardt v. Anne Arundel County* (1976), 31 Md. App. 355, 356 A.2d 917.) Neither does it impede interstate commerce. Instead, the tax is imposed only upon boat owners who use certain physical facilities within the city of Chicago. In addition to upholding the tax in *Chicago Park District,* our supreme court held in an earlier case that the Park District harbor fee is not an unconstitutional exercise of municipal authority over navigable waters, nor does it interfere with interstate commerce. *MacNeil v. Chicago Park District* (1948), 401 Ill. 556, 82 N.E.2d 452.

Additionally, the ordinance at issue here contains express exemptions such that it does not include "any consideration paid for the mooring or docking of a watercraft in the loading or unloading of goods or materials, or the boarding or unboarding of passengers, in the conduct of a business." (Chicago Municipal Code sec. 200.8—1.A (1984).) The ordinance also states that the tax shall not apply to the extent that it would violate the Constitution of the United States or the State of Illinois. (Chicago Municipal Code sec. 200.8—1.A (1984).) Such an express exemption in an ordinance is sufficient to avoid an impermissible burden on interstate commerce. (See *People ex rel. Cornell Steamboat Co. v. Sohmer* (1915), 235 U.S. 549, 59 L. Ed. 355, 35 S. Ct. 162.) Furthermore, a tax on an event occurring within the taxing body is not a prohibited tax on interstate commerce. (*Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694, 339 N.E.2d 351.) A tax is valid upon things which are at rest within the taxing body, notwithstanding the fact that they might have been involved in interstate transit before or after that time. (*American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251, 319 N.E.2d 28; *Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694, 339 N.E.2d 351.) The moors or docks to which the boats are tied remain stationary within the Chicago harbors, and thus the tax is not upon goods which are in the stream of interstate commerce.

■■■ Plaintiffs also argue that special benefits must be conferred by the city on the persons burdened by the mooring tax. In addition, plaintiffs contend that the tax violates the public policy of the State of Illinois that parks are not to be operated preferentially to benefit any one group. Plaintiffs maintain that the tax benefits only the citizens of Chicago so that their property taxes do not need to be increased. States are vested with great latitude in imposing general revenue taxes. (*Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946, *rehearing denied* (1981), 453 U.S.

927, 69 L. Ed. 2d 1023, 102 S. Ct. 889.) In return for general revenue taxes, taxpayers are constitutionally entitled only to the enjoyment they derive from the privilege of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. A tax is not an assessment of benefits, but instead is a means of distributing the burden of the cost of government. This principle has not been divested by the commerce clause merely because the taxed activity has some connection to interstate commerce, especially when the tax is levied on an activity conducted within the State. (*Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946.) Here, the general revenue mooring tax need not be supported by specific benefits.

 Plaintiffs in *Lynch* contend that the mooring tax unlawfully impedes their rights as private citizens to travel. The right to travel is a fundamental constitutional right, and citizens may not be punished for exercising that right. (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322.) Here, no penalty is imposed on persons who recently exercised their right to travel and have arrived in a Chicago harbor. (*Cf. Dunn v. Blumstein* (1972), 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995; *Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (durational residence requirements).) Instead, this ordinance applies to all persons paying a mooring or docking fee, whether they have recently arrived, have been here for a lengthy period of time, or have never left the Chicago harbors. (See, *e.g., Dunn v. Blumstein* (1972), 405 U.S. 330, 342 n.12, 31 L. Ed. 2d 274, 284 n.12, 92 S. Ct. 995, 1003 n.12; *Shapiro v. Thompson* (1969), 394 U.S. 618, 638 n.21, 22 L. Ed. 2d 600, 617 n.21, 89 S. Ct. 1322, 1333 n.21.) The mooring tax is not aimed at transients. (See, *e.g., Village of Belle Terre v. Boraas* (1974), 416 U.S. 1, 39 L. Ed. 2d 797, 94 S. Ct. 1536.) The fact that it affects boats, which are mobile vehicles, does not alter this finding. The purpose of the tax is not to keep people away from Chicago harbors. (See *CEEED v. California Coastal Zone Conservation Com.* (1974), 43 Cal. App. 3d 306, 118 Cal. Rptr. 315.) Furthermore, a tax imposed for the purpose of raising revenue may be characterized as an enforced contribution, but it is not a penalty imposed on the taxpayer. (See *Welch v. Henry* (1938), 305 U.S. 134, 83 L. Ed. 87, 59 S. Ct. 121, *rehearing denied* (1938), 305 U.S. 675, 83 L. Ed. 437, 59 S. Ct. 250; see generally 84 C.J.S., *Taxation* sec. 1, at 33 n.20 (1954).) We conclude, therefore, that the boat mooring tax does not impose a penalty on persons who have exercised their right to travel.

Plaintiffs in *Forsberg* and *Lynch* contend that the mooring tax vi-

olates the constitutional prohibition against laying duties of tonnage because the tax is not structured as compensation for specific benefits conferred. This argument is raised for the first time on appeal and thus has been waived. (*City of Urbana v. Burgess* (1976), 40 Ill. App. 3d 244, 351 N.E.2d 607.) Furthermore, the tonnage clause is meant to protect the freedom of commerce. The mooring tax is a tax upon something which occurs after the boat has entered the port. (See *In re Los Angeles Lumber Products Co.* (S.D. Cal. 1942), 45 F. Supp. 77; *Reinhardt v. Anne Arundel County* (1976), 31 Md. App. 355, 356 A.2d 917.) The mooring tax is imposed only upon those who pay a fee for the docking or mooring facilities.

██ The *Forsberg* plaintiffs next contend that the mooring tax is an impermissible tax on occupations because it taxes boat owners who are engaged in occupations such as chartering, commercial fishing, and sightseeing tours. Article VII, section 6, of the Illinois Constitution provides that a home rule unit shall have only the power that the General Assembly may provide by law to license for revenue or impose taxes upon or measured by income or earnings or upon occupations. (Ill. Const. 1970, art. VII, sec. 6(a).) An occupation tax either regulates or controls a given business or occupation, or imposes a tax for the privilege of exercising, undertaking, or operating a given occupation, trade or profession. It licenses a person engaged in a given occupation. (*Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3.) An excise tax such as the one at issue here is not transformed into an occupation tax because some of the boat owners subject to the tax happen to use the boats in occupations or businesses. (See *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118.) While the tax here burdens some persons who moor their boats in connection with their business, it also burdens recreational and other nonprofit boat users. The tax is not confined to those who are engaged in business for profit and is not a tax imposed on a given occupation. (See *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118.) Plaintiffs' arguments that the mooring tax is a tax upon the Park District's service of leasing moors and docks is not before this court because the Park District is not a party to this action, as we discuss below. Moreover, while the Park District provides services, it is not required to pay or collect the tax. (See *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) The tax, therefore, is not a tax upon occupations.

██ Plaintiffs in *Forsberg* also contend that the mooring tax has been and will be administered unfairly. Plaintiffs cite the fact that on

February 27, 1984, the acting director of revenue unilaterally extended the date for paying the tax, which "by itself, proves the arbitrary manner in which the tax is administered." We fail to see how this extension proves any arbitrary or discriminatory treatment. The extension was uniform in effect, and plaintiffs have failed to establish intentional or purposeful discrimination. (See *Kerasotes Rialto Theater Corp. v. City of Peoria* (1979), 77 Ill. 2d 491, 397 N.E.2d 790.) Plaintiffs also point to the form used by the city, which fails to tax or take into account persons who store their watercraft, use the launch facilities, or use the mooring and docks on a temporary or irregular basis. Plaintiffs voluntarily withdrew this argument before the trial court, and we will not address it here.

■ Plaintiffs in *Forsberg* next contend that the tax is invalid because the Park District fees upon which it is based are excessive and arbitrarily set for several reasons. The Park District is not a party to this action, and thus plaintiffs cannot litigate this issue here. An entity having a material interest in the subject matter of the litigation is a necessary party. (*Consolidated Cable Utilities, Inc. v. City of Aurora* (1982), 108 Ill. App. 3d 1035, 439 N.E.2d 1272.) On review, this court may not disregard this rule of joinder. (See *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 336 N.E.2d 115.) The Park District would be materially affected by a finding that its fees are excessive and arbitrary. Moreover, the additional 25% charged to nonresidents is being considered in a separate action before this court. (Broeckl v. Chicago Park District (1st Dist., 3d Div.) Nos. 85—2995, 85—3062.) For these reasons, we will not address the propriety of the Park District fees further.

Plaintiffs in *Forsberg* contend further that the taxes paid to the city are a gift unless held in a segregated account. We find that an escrow fund is not necessary. If the need should ever arise, a taxpayer may recover excess taxes under section 6 of the Boat Mooring Tax Ordinance. Chicago Municipal Code ch. 200.8, sec. 6 (1984).

■ Finally, plaintiffs in *Forsberg* contend that the trial court erred in denying plaintiffs' motion to certify the class. A class cannot be certified where no cause of action exists. (*Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490.) The trial court's denial of the motion to certify the class was proper.

We find, therefore, that the trial court's dismissal of the complaints in *Forsberg* and *Lynch* was proper because plaintiffs in those actions failed to state a cause of action.

We turn now to the issues raised by the Chicagoland Boat Owners

Association (CBOA) and the Chicago Yachting Association (CYA). Both CBOA and CYA first contend that they have standing to sue. The CBOA is a voluntary association consisting of approximately 2,400 individual boat owners who use the rivers and lakefront of Chicago for recreational purposes. The four individually named plaintiffs each own boats which are sometimes moored in Chicago. All four plaintiffs have paid mooring fees to the Chicago Park District and thus would be affected by the mooring tax, which is based on such fees. The CYA is a not-for-profit corporation and a voluntary association of Chicago area yacht clubs, which have several thousand individual members. Several of the yacht clubs own and maintain moorings.

■■■ One requirement in order to establish standing to bring an action for declaratory relief is that an association suing on behalf of its members must be "interested in the controversy." (Ill. Rev. Stat. 1983, ch. 110, par. 2—701(a).) "Interested" requires more than merely having a curiosity about or concern for the outcome of the controversy. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490.) The party seeking relief must have a personal claim, stake, status, or right which is capable of being protected. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490.) An injury is direct when it touches the legal relations of parties who stand in a position adverse to one another. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490.) The association must allege and prove that it suffered an injury in its individual capacity to a substantive, legally protected interest. (*Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490; *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256.) The CBOA and the CYA are not subject to the tax. Neither association owns moorings or pays mooring fees in Chicago. They have shown no direct injury suffered as a result of the mooring tax.

In *Chicago Park District,* the supreme court found that the Park District had standing on the basis of its allegations that the mooring tax interfered with the Park District's bond contracts and regulation functions and diminished revenues derived from fees. Thus, the Park District was able to show a direct injury. The CYA's reliance on *Illi-*

*nois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529, is misplaced. The CYA states that the court in that case "held that ownership of gamefowl by some of the association's members" was determinative of the standing issue. That court, however, held that the association itself owned gamefowl, not that the association's members owned gamefowl. In contrast, the associations here do not pay mooring fees. Only the members of the associations pay mooring fees.

 The associations argue that they meet the Federal standing requirements. (See *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197.) Under that standard, an association has standing to bring suit in its representative capacity in certain situations, notwithstanding the fact that the association suffered no direct injury. While our supreme court discussed the Federal standard in *Underground Contractors Association v. City of Chicago,* the court has continued to use the direct-injury requirement. (See *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529.) We find no indication that Illinois courts have adopted the Federal standard. Illinois decisions discussing an association's standing to maintain an action for declaratory relief on behalf of its members clearly hold that an association's representational capacity alone is not enough to give it standing, absent a showing that it has a recognizable interest in the dispute, peculiar to itself and capable of being affected. See, *e.g., Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298 (no standing where association is not engaged in construction business and does not compete for public works contracts); *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256 (no standing where association itself does not purchase water from defendant); *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490 (no standing where association has never been a townhome unit owner, does not hold title to townhome roofs, or have authority to maintain roofs for damages beyond ordinary wear).

 An additional requirement for standing is that there be an "actual controversy." (Ill. Rev. Stat. 1983, ch. 110, par. 2—701(a).) This requires a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. *(Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Berg v. City of Chicago* (1968), 97 Ill. App. 2d 410, 240 N.E.2d 344.) The CBOA and the CYA present allegations

that their memberships will drop and the existence of the associations will be threatened. These are merely conclusory allegations. (See *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298.) Their complaints fail to allege facts showing injury or threat of injury sufficient to allow them to maintain these actions. The trial court, therefore, properly found that the CBOA and the CYA had no standing to challenge the boat mooring taxes on behalf of their members. In addition, our holding herein that the tax is constitutional would render the associations' challenges moot even if we found the motions to dismiss were improperly granted, and thus no actual case or controversy exists. See 66 Ill. 2d 371, 362 N.E.2d 298.

The CYA and the CBOA contend further that the trial court erred in finding their actions were barred by two prior pending actions. Although we have found that these associations have no standing, *CBOA* includes four individual plaintiffs, and thus we also address this issue. Section 2—619(a)(3) of the Code of Civil Procedure states that an action may be dismissed on the ground that there is another action pending between the same parties for the same cause. (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3).) The purpose of this section is to further the interest of judicial economy and avoid a multiplicity of actions, and it should be construed liberally. (*Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 434 N.E.2d 31.) Neither the parties nor the cause need be identical to the prior pending suit. *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 357 N.E.2d 534; *Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 434 N.E.2d 31.

The *Forsberg* plaintiffs and the *Lynch* plaintiffs both included persons who have paid or will pay mooring or docking fees to the Chicago Park District. The *CYA* and *CBOA* plaintiffs include the two associations and four individual members of the CBOA. Those individual members and the members whom the associations represent are subject to the mooring fees and therefore are included as members of the classes in *Forsberg* and *Lynch.* Thus, the parties are substantially the same in these actions. The fact that no class was ever certified does not alter this holding because a class cannot be certified unless the named plaintiffs have stated a cause of action. *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774, 465 N.E.2d 490.

The class plaintiffs in *CBOA* state that they were the first to define the class properly, and the class plaintiff in *CYA* argues that it was the only plaintiff to bring the Park District into the litigation.

Those points are irrelevant in view of our holding that the associations had no standing to sue. Furthermore, that one action is filed prior to another is not determinative under section 2—619(a)(3). *A. E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23.

A showing of substantial similarity of issues is sufficient to establish that the suits present the "same cause" under section 2—619(a)(3). (*Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 434 N.E.2d 31.) Both cases must request relief which is predicated on substantially the same set of facts. (*Skolnick v. Martin* (1964), 32 Ill. 2d 55, 203 N.E.2d 428, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562.) The four consolidated cases here are all predicated on substantially the same set of facts involving persons who pay mooring or docking fees in Chicago. These actions all challenge the constitutionality of the tax based on those fees. All plaintiffs seek to have the mooring tax declared void and enjoin the city of Chicago from its enforcement. While some of the legal theories raised in the four actions differ, the causes need not be identical. (*Catalano v. Aetna Casualty & Surety Co.* (1982), 105 Ill. App. 3d 195, 434 N.E.2d 31.) Plaintiffs in *CBOA* argue that they alleged a different factual situation because even if the tax is not unconstitutional on its face, it could be unconstitutional as applied to certain individual cases. We note that CBOA's complaint only challenges the tax on its face.

In sum, we hold that the trial court properly dismissed the *CBOA* and *CYA* complaints with prejudice under section 2—619(a)(3) because the actions were barred by the pending *Forsberg* and *Lynch* suits. We agree with the trial court's finding that the tax is constitutional, and the trial court properly dismissed the *Forsberg* and *Lynch* complaints for failure to state a cause of action and properly denied all requests to amend plaintiffs' complaint.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McGILLICUDDY and WHITE, JJ., concur.