CABLE TELEVISION AND COMMUNICATIONS ASSOCIATION OF ILLINOIS, Plaintiff-Appellant, v. AMERITECH CORPORATION *et al.*, Defendants-Appellees.

Second District   No. 2—96—0843

Opinion filed May 16, 1997.

Rosemarie Calandra and Keith E. Roberts, Sr., both of Donovan &

Roberts, P.C., of Wheaton, and Richard J. Prendergast, Ellen M. Murphy, and Michael T. Layden, all of Richard J. Prendergast, Ltd., of Chicago, for appellant.

Joseph M. Laraia, of Laraia & Hubbard, P.C., of Wheaton, Lily Fu and Howard J. Roin, both of Mayer, Brown & Platt, of Chicago, and Lynn D. Thesing, of Alpharetta, Georgia, for appellees Ameritech Corporation and Ameritech New Media Enterprises, Inc.

Richard J. Ramello and John M. DiCaro, both of Storino, Ramello & Durkin, of Rosemont, for appellee Village of Glendale Heights.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Cable Television and Communications Association of Illinois (the Association), appeals from the dismissal of its complaint against defendants, Ameritech Corporation (Ameritech), Ameritech New Media Enterprises, Inc. (n/k/a Ameritech New Media, Inc.) (Ameritech New Media), and the Village of Glendale Heights (the Village). Ameritech New Media and the Village jointly motioned to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1994)). The circuit court of Du Page County entered an order granting the motion to dismiss the complaint based on the court's determination that the Association lacked standing to bring its complaint.

On appeal, the Association contends that the trial court erred in dismissing the complaint because it had standing to bring the complaint (1) under Illinois law; (2) under federal law; and (3) based on its past representation of its members in various legal proceedings in Illinois.

The Association is an Illinois not-for-profit corporation whose members are cable television companies that hold franchises to provide cable television service in Illinois. Time Warner Entertainment—Advance/Newhouse Partnership (Time Warner) is a member of the Association.

Prior to August 17, 1995, Time Warner held the sole franchise to provide cable television service in the Village. On August 17, 1995, the Village enacted an ordinance granting Ameritech New Media a nonexclusive franchise to provide cable television service in the Village also. Time Warner is not a party to this case and has not sought to intervene.

On October 23, 1995, the Association filed a complaint in the circuit court of Cook County. The case was subsequently transferred to Du Page County. The complaint claimed that the cable television franchise that the Village granted to Ameritech New Media violated

certain federal and state statutes. The complaint sought declaratory and injunctive relief, including a permanent injunction prohibiting Ameritech New Media from providing cable television services in the Village.

In response to the complaint, Ameritech New Media and the Village jointly motioned to dismiss the complaint pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 1994)). The motion to dismiss asserted that the Association lacked standing to bring this action. Defendants argued that the Association lacked standing because (1) the Association had not alleged in its complaint and could not properly allege that it had suffered any direct injury from the agreement between Ameritech New Media and the Village; and (2) the Association's representative capacity, by itself, did not give it standing.

The Association responded to the motion to dismiss by filing the affidavit of its president, Gary J. Maher. Maher's affidavit stated, *inter alia*, that the Association has acted as the legal representative of its members on a number of occasions and has acted as a party on behalf of its members in a variety of legal proceedings. The affidavit also stated that the Association's sole source of revenue is membership fees of 4 cents per month per subscriber paid by its members, so that if a member loses subscribers the result would be a decline in the Association's revenues.

The trial court conducted a hearing on the matter. The court noted that the underlying issue was a relatively narrow question regarding the competitive positions, within the framework of applicable federal and state statutes, of Time Warner and Ameritech New Media as providers of cable television services in the Village. The court determined that the Association, notwithstanding its claimed loss of revenues from a decline in Time Warner's subscribers, did not have a direct interest in the underlying issue and therefore did not have standing.

■ The standing doctrine requires that a party, either in an individual or representative capacity, have a real interest in the action brought and in its outcome. *In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996). The purpose of the standing doctrine is to make sure that only parties with a sufficient stake in the outcome of the controversy raise the issues before the court. *Harris Trust & Savings Bank v. Duggan*, 95 Ill. 2d 516, 527 (1983).

■ Under Illinois law, an association's representative capacity, by itself, is not enough to give it standing to maintain an action for declaratory relief on behalf of its members. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 377 (1977). Rather, an associa-

tion must also have a recognizable interest in the dispute peculiar to itself and capable of being affected. *Underground Contractors Ass'n,* 66 Ill. 2d at 377.

With few exceptions, Illinois courts have consistently held that an association does not have standing to bring an action on behalf of its members unless it has been or will be directly injured and therefore has a personal claim related to its own property, or that it has suffered or will suffer injury to a substantive, legally protected interest in its individual capacity. See, *e.g., Underground Contractors Ass'n v. City of Chicago,* 66 Ill. 2d 371 (1977) (no standing where association was not in the construction business and did not bid for public works contracts in its individual capacity); *Westwood Forum, Inc. v. City of Springfield,* 261 Ill. App. 3d 911 (1994) (no standing where associations did not own any property and were not in the business of owning or selling property); *Indian Hill Neighbors' Ass'n v. American Cablesystems,* 171 Ill. App. 3d 789 (1988) (no standing where association had no property rights in area to be developed by cable television franchisee); *Forsberg v. City of Chicago,* 151 Ill. App. 3d 354 (1986) (no standing where associations were not subject to the boat-mooring tax in question, did not own boat moorings, and did not pay boat-mooring fees).

In this case, the Association first contends on appeal that it has standing under Illinois law because it satisfies the direct injury requirement. The Association bases its contention on its probable loss of revenues as a result of the provision of cable television services to the Village's residents by Ameritech New Media. The Association asserts that it will likely suffer a loss of revenues because the provision of cable television services to the Village's residents by Ameritech New Media will reduce the number of Time Warner's subscribers. The Association maintains that this will result in a proportionate reduction in the membership fees Time Warner pays to it. The Association argues that such a loss of revenues would constitute a real injury to a legally cognizable interest in its individual capacity sufficient to confer standing on it to bring this action.

■ We disagree. The loss of revenues that the Association claims it will suffer is not a direct injury. Rather, the projected loss of revenues is merely an indirect result of a claimed reduction in the number of Time Warner's subscribers. The Association itself is not in the business of providing cable television services and therefore does not have any subscribers whose numbers could be reduced by competition from Ameritech New Media. The Association's linkage of its revenues to the number of its members' subscribers does not change the indirect nature of its claimed injury. Thus, under Illinois law, the Association does not have standing to bring this action.

Alternatively, the Association contends that it has standing under the federal associational standing doctrine set forth by the United States Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975), and *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977). In *Warth* and *Hunt* the Court held that an association has standing to bring a suit in its representative capacity in certain situations even if the association has not suffered a direct injury.

The Association acknowledges that Illinois courts are not bound to follow the federal associational standing doctrine, but urges us to adopt it on the ground that the rationale of the *Warth* and *Hunt* decisions is compelling. In support of its position, the Association asserts that (1) the Illinois Supreme Court has never explicitly rejected the federal associational standing doctrine; (2) the appellate court's rejection of the federal doctrine in *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354 (1986), was misplaced because a review of our supreme court's decisions indicates that the court would be receptive to adopting the federal standard; and (3) numerous other states have chosen to follow the federal doctrine.

The Association argues that it satisfies the federal requirements for associational standing. In the Association's view, if we adopt the federal doctrine, we must conclude that the Association has standing to bring this action.

We decline to adopt the federal associational standing doctrine. It is well established that Illinois courts are not required to follow federal law on issues of standing. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 491 (1988). Moreover, the Association has not cited any Illinois case that has followed the federal doctrine. In *Underground Contractors Ass'n*, where our supreme court determined that it was not required to address the merits of the federal doctrine, the court noted:

> "Illinois decisions which have discussed an association's standing to maintain, on behalf of its members, an action for declaratory relief clearly indicate that an association's representational capacity alone is not enough to give it standing, absent a showing that it has a recognizable interest in the dispute, peculiar to itself and capable of being affected." *Underground Contractors Ass'n*, 66 Ill. 2d at 377.

Subsequently, Illinois courts have continued to use the direct-injury requirement to determine whether an association has standing. See, e.g., *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443 (1979); *Westwood Forum, Inc. v. City of Springfield*, 261 Ill. App. 3d 911 (1994).

Perhaps most important, in *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354 (1986), the appellate court specifically declined to follow the federal doctrine. The Association has not persuaded us to reject *Forsberg.* We agree with *Forsberg,* and the cases cited therein, that an association's representative capacity alone is not enough to give it standing in an action for declaratory and injunctive relief.

For these reasons, we decline to follow the federal associational standing doctrine. Accordingly, we need not determine whether the Association has satisfied the requirements for standing under the federal doctrine.

The Association's final contention that it has standing to bring this action is based on its assertion that in the past it has advanced the interests of its members in a variety of legal proceedings throughout Illinois. In support of this contention, the Association cites three Illinois cases: *Illinois-Indiana Cable Television Ass'n v. Illinois Commerce Comm'n,* 55 Ill. 2d 205 (1973), *Central Illinois Public Service Co. v. Illinois Commerce Comm'n,* 268 Ill. App. 3d 471 (1994), and *People ex rel. O'Malley v. Illinois Commerce Comm'n,* 239 Ill. App. 3d 368 (1993). The Association argues that these cases show that it has been recognized and accepted as an appropriate party in litigation involving the interests of its members and the cases therefore support its claim of standing in this case.

The cited cases do not support the Association's claim that it has standing. The cited cases are all distinguishable from this case because the cited cases involve appeals from Illinois Commerce Commission (the Commission) proceedings under the Public Utilities Act (Act) (220 ILCS 5/1—101 *et seq.* (West 1994)). The Act provides that "any person or corporation" may bring a complaint before the Commission and that "[n]o complaint shall be dismissed because of the absence of direct damage to the complainant." 220 ILCS 5/10—108 (West 1994). Thus, under the Act, an association, in a representative capacity, may properly bring a complaint before the Commission or pursue an appeal from a decision by the Commission. *Illinois Telephone Ass'n v. Illinois Commerce Comm'n,* 67 Ill. 2d 15, 24-25 (1977). However, this does not conflict with our holding that representational capacity alone is not enough to give an association standing to bring a declaratory judgment action. *Illinois Telephone Ass'n,* 67 Ill. 2d at 25-26.

It follows that the Association's representation of its members in appeals from decisions by the Commission, as in the cited cases, has no bearing on whether the Association has standing to bring this action. Therefore, the Association's argument that it has standing in this case because of its history of representation of its members in the cited cases fails.

Based on the foregoing, we conclude that the circuit court did not err when it dismissed the Association's complaint on the ground that the Association does not have standing to bring this action. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER, P.J., and THOMAS, J., concur.