SPRING MILL TOWNHOMES ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* OSLA FINANCIAL SERVICES, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—95

Opinion filed December 29, 1983.—Modified on denial of rehearing June 28, 1984.

Vincent P. Reilly and J. Calvin Daulton III, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellants.

William J. Campbell, Jr., and Donald A. Vogelsang, both of Reuben & Proctor, of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Spring Mill Townhomes Association (the Association), brought an action against the defendants, OSLA Financial Services, I. Simon & Sons, Inc., and The Simon/R.G. Group, Inc., for a breach of implied warranty of habitability for latent construction and design defects in the townhome roofs. After the plaintiff's case, OSLA filed a motion for a directed finding against the plaintiff alleging that the plaintiff lacked standing to bring this type of action. The trial court granted OSLA'S motion, and the plaintiff appeals from the trial court's order.

From 1972 to 1977, the defendants, in a joint venture, developed, constructed, marketed and sold townhomes in the Spring Mill Townhomes Development (the Development). On July 16, 1973, the joint venturers executed a "Declaration of Party Wall Rights, Easements, Covenants and Restrictions" (the Declaration). The Declaration provided that the Development would be divided into dwelling parcels and common areas. The dwelling parcels were to be owned by the individual townhome owners and the common areas were to be owned by the Association. The dwelling parcels were defined as whatever was within the lot lines on the plats. All areas outside the lot lines were common areas. The townhome roofs which cover buildings containing four to six individual townhome units per building were within the lot lines. Therefore, the townhome roofs were not part of the common area. The Declaration also provided for a Townhome Association to be formed and that the developer would convey the common areas to the Association.

On August 6, 1973, pursuant to the Declaration, the Spring Mill Townhomes Association was created under the General Not For Profit Corporation Act of Illinois. In order to govern the Association articles of incorporation, the Declaration and bylaws were adopted. Among other provisions, the articles provided that the Association was to promote the health, safety and welfare of the residents of the Development. It also provided that the Association was to own, acquire, build, operate and maintain the common areas and that it was to maintain, rebuild and replace the external structural portions of the townhouses when damage to these areas resulted from ordinary wear and deterioration. The townhome roofs are considered part of the external structural portions of the townhomes. The articles also provided that every record owner of a townhome unit in the Development was to be a member of the Association and that the Association was to finance its activities by charging its members assessments. On December 30, 1976, pursuant to the Declaration OSLA conveyed the common areas of the Development to the Association.

During the pretrial proceedings, the court denied the plaintiffs' (the Association and the individual townhome owners) motion for class certification. The court also ordered the claim based on breach of implied warranty of habitability be stricken as to the townhome owners individually named as plaintiffs. These plaintiffs subsequently settled with the defendant. In addition, the court permitted the Association, in its individual capacity, to maintain a two-count complaint against the defendants. For the purposes of this appeal, only count I, the implied warranty of habitability count, is in issue. OSLA then filed its

answer and affirmative defense to the third amended complaint claiming that the plaintiff lacked standing to maintain the alleged cause of action set out in count I.

The case then proceeded to trial, and at the close of the plaintiff's case in chief, OSLA filed a motion for a directed finding. The trial court granted OSLA's motion and entered judgment in favor of the defendant finding, among other things, that although the Association had presented sufficient evidence of latent defects in the townhome roofs to overcome the motion for a directed finding, the plaintiff did not have standing nor authority to maintain the action for breach of implied warranty of habitability. The trial court based its conclusion on the fact that there was no statutory grant of standing, as in the Condominium Property Act; that the plaintiff never bought a townhome from the defendant, nor was it a new subsequent purchaser; and that nothing in the Declaration empowered or bound the plaintiff to bring this type of lawsuit for latent defects.

The plaintiff makes three principal arguments on appeal, and at the core of each of these arguments is that an injury has occurred as a result of the latent construction and design defects in the townhome roofs and that the plaintiff has the standing to sue in order to remedy that injury. Initially the plaintiff asserts that case law confers standing on it. Secondly, the plaintiff asserts that the provisions of its controlling documents confer standing on it. Lastly, the plaintiff asserts that it has standing to sue as a result of a legally recognizable duty created by an ambiguity in the Declaration. We disagree.

■■ ■ Under Illinois case law, absent a statutory grant of standing, a not-for-profit corporation in order to establish standing to sue on behalf of its members must allege and prove that it has suffered an injury in its individual capacity to a substantive legally protected interest. (*Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256; see also *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 359 N.E.2d 1137.) The injury asserted by the plaintiff in this case is a breach of the implied warranty of habitability. The scope of protection under this implied warranty only includes direct or new subsequent purchasers. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324; *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.) However, in a case similar to the instant case, *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, 454 N.E.2d 363, the court held that under the particular circumstances of the case, a townhome association had standing as the representative of the homeowners to enforce an implied warranty of hab-

itability of common lands even though it was not a unit owner. In *Briarcliffe*, in determining that the Association had a legally protected interest in the litigation, the court considered as critical to its determination the fact that the Association held quitclaim deeds to the common lands and that they were under contract, pursuant to the Declaration, to manage the common lands.

In the case at bar, under *Redarowicz* and *Petersen*, the Association has never been a unit owner, and unlike the Association in *Briarcliffe*, this Association does not hold title to the townhome roofs nor does it have the authority to maintain the roofs for damage other than ordinary wear and deterioration. Such title is held by the individual townhome owners and latent defects are not ordinary; thus, the Association has failed to establish under these circumstances that it has a substantive legally protected interest to which an injury could be alleged. Therefore, under Illinois case law the plaintiff lacks standing to bring a claim for breach of implied warranty of habitability.

However, the plaintiff also asserts that we should follow the court's rationale in two factually similar cases in Pennsylvania. (*Fay v. Bohlin & Powell* (1982), 298 Pa. Super. 69, 444 A.2d 179; *1000 Grandview Association v. Mount Washington Associates* (1981), 290 Pa. Super. 365, 434 A.2d 796.) In those cases, the court conferred standing on an association even though it did not suffer an injury in its individual capacity. The Pennsylvania court reached its holding by applying the general principles of standing as applied under the Federal rules. However, the defendant contends that even under the more expansive Federal standard for standing, the Association still lacks standing. Under the Federal rule, even in the absence of injury to itself, an association may have standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own behalf and neither the claim asserted nor the relief requested requires participation of individual members in a lawsuit. *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197.

In this action the Association is asserting a claim for damages on behalf of its members. However, in attempting to prove the alleged damages, the plaintiff has failed to indicate how it would not be necessary for each unit owner to testify as to his individual claim. Thus, it appears that individual participation, in the form of individual testimony, would be necessary and that this testimony would clearly contravene a prerequisite for associational standing set forth by the Federal rule. Accordingly, the plaintiff has failed to demonstrate how case law has conferred standing in the Association in the instant action.

What the plaintiff suggests in its second argument is that we confer standing on it solely on the basis of the general purpose provisions of its articles, bylaws and the Not For Profit Corporation Act of Illinois. While these provisions enable the Association to act with great latitude in order to serve its members, it is not possible to allow the Association to transcend legal precedent by conferring standing on itself. We have already established that the plaintiff has failed to establish standing by failing to allege and prove any injury in its individual capacity to a substantive legally protected interest. Therefore, the plaintiff's contention that the general purpose clauses in the articles of incorporation, the bylaws and the Not For Profit Corporation Act of Illinois establish standing with the plaintiff is completely contrary to the case law cited above.

The plaintiff's last assertion is that it has standing to sue as a result of a legally recognizable duty created by an ambiguity in the Declaration. As previously stated, the plaintiff has failed to allege and prove the necessary facts in order to have standing to bring an action for breach of implied warranty of habitability. The plaintiff's last assertion adds nothing new to cure the already defective claim of standing. At best, this argument involving the Declaration establishes a claim in a contract action, which is clearly beyond the scope of this appeal and therefore warrants no further discussion. Accordingly, the plaintiff has failed to demonstrate how it has established standing in the instant action, and therefore we find that the trial court was correct in dismissing the plaintiff's action for lack of standing.

■ The Association next contends that in the alternative to finding the plaintiff has standing, we should find that the trial court erred in refusing to certify this case as a class action. The plaintiff asserts that the original named individual plaintiffs, stricken by the trial court, should be reinstated, and that under their representation, the prerequisites for class certification are satisfied. OSLA argues that the named individual plaintiffs have all signed releases, and are therefore without a cause of action to assert against the defendant.

It is well settled that a class cannot be certified unless the named plaintiffs have a cause of action. (*Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813.) In the instant case, of all the originally named plaintiffs, the Association has been dismissed for lacking standing and the individual plaintiffs have either signed releases or have been stricken from the complaint. It is apparent that there is no named plaintiff that has a cause of action against OSLA for breach of implied warranty of habitability so as to maintain this case as a class action.

█ The plaintiff additionally asserts that if this court finds that no named plaintiff may serve as class representative, then we should remand and order the trial court to appoint a new class representative. (*Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 384 N.E.2d 316.) The *Barliant* case involved the dismissal of the case because of a conflict of interest with the class representative. The Illinois Supreme Court held that dismissal was improper because it destroyed, on nonsubstantive grounds, a class action that had already been certified. The court ordered a new class representative to take over the action. In the instant case, no class has ever been certified and the deficiency in the status of the named plaintiffs is substantive, in that they have no cause of action. Accordingly, we find that *Barliant* is not controlling in this matter and that no new class representative should be appointed. The trial court did not err in refusing to certify this case as a class action, and we therefore affirm its decision.

For the foregoing reasons, the decision of the trial court is affirmed.

ROMITI, P.J., and JOHNSON, J., concur.