47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The TOWER SOUTH PROPERTY OWNERS ASSOCIATION, a South
Carolina Eleemosynary Corporation, Plaintiff-Appellee,
v.
SUMMEY BUILDING SYSTEMS, INCORPORATED, a North Carolina
Corporation, Defendant-Appellant.
 No. 93-2557.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Feb. 15, 1995.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. David A. Faber, District Judge, sitting by designation. (CA-91-3104-4-21)
 ARGUED: David Betts Hamilton, PETREE, STOCKTON, L.L.P., Charlotte, NC, for Appellant. Howell V. Bellamy, Jr., BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach, SC, for Appellee. ON BRIEF: B. David Carson, PETREE, STOCKTON, L.L.P., Charlotte, NC; John Max Leiter, LEITER & SNOOK, P.A., Myrtle Beach, SC, for Appellant. David B. Miller, BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach, SC, for Appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Summey Building Systems, Inc. ("Summey"), the developer of a condominium project and the defendant in the action below, appeals the district court's post-trial rulings upholding the jury verdict against Summey for breach of implied warranty of fitness, breach of contract, and negligent construction. We affirm.
 
 I.
 
 2
 Summey is the developer of Tower South Horizontal Property Regime (the "Tower South Regime"), a condominium project in Myrtle Beach, South Carolina. Summey contracted with R. N. Rouse & Co. (the general contractor) to build the Tower South Regime, as well as with other outside firms to provide architectural and structural engineering services. During construction, Summey maintained onsite personnel to monitor the building of the project and actively participated in construction decisions.
 
 
 3
 The condominium project included an adjacent parking deck, which is the subject of this litigation. The original recorded building plans for the deck called for the installation of a waterproof membrane to prevent leakage onto the parking deck's lower level. Early in the design stage of the project, before any of the condominium units were sold, a decision was made to eliminate the waterproof membrane. Design changes were made, and the contractor constructed the parking deck with a gutter system for water removal, instead of a waterproof membrane. However, Summey did not delete the specification for a waterproof membrane from the recorded building plans.
 
 
 4
 Construction of Tower South, including the parking deck, was substantially completed on July 1, 1987. On July 17, 1987, Summey filed a Master Deed, in accordance with the South Carolina Horizontal Property Act, S.C.Code Ann. Secs. 27-31-10 et seq. The Master Deed submitted to the Tower South Regime the land and improvements making up Tower South, including the parking deck. The Master Deed incorporated by reference the original architectural drawings, which were filed with the Master Deed. These drawings contained the specification for a waterproof membrane, even though this feature had been deleted from the plans used in the actual construction.
 
 
 5
 The Tower South Property Owners Association (the "Association") was formed according to the Master Deed. Under Article XX of the Master Deed, the Association is responsible for maintenance, repair, and replacement of all common elements of Tower South, one of which is the parking deck. Article XXVIII of the Master Deed provides that the developer, as long as it owns 30% or more of the unsold apartments in the Regime, has the right to select all the members of the Association's board of directors. Summey retained control of the Association until January 14, 1989.
 
 
 6
 Problems with the parking deck began soon after its construction. Excessive amounts of water and caustic materials would leak through the upper deck and drip onto cars parked underneath the deck. Cracks also formed in the upper deck surface. After Summey relinquished control of the Association, both Summey and the Association hired experts to investigate the condition of the deck. According to the Association, the tests revealed a second problem with the deck: the bond between the top deck surface and the pre-cast double-T members was insufficient to obtain the required H-20 loading capacity. Furthermore, during the course of this litigation, one of the planter boxes on the parking deck collapsed. Although the design for the planter boxes included steel reinforcements to prevent the walls from collapsing, investigation revealed that several of the planter boxes did not contain such reinforcements.
 
 
 7
 The Association sued Summey for (1) breach of implied warranty of fitness, (2) breach of contract, (3) negligent construction, (4) fraud, and (5) negligent misrepresentation. After discovery, the trial court granted summary judgment in favor of Summey on the fraud and negligent misrepresentation claims. The remaining three causes of action were tried before a jury.
 
 
 8
 The jury returned a verdict in favor of the Association on all three counts and found that the Association was not contributorily negligent. The jury awarded damages in the amount of $205,000. Summey filed a motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure and a motion for a new trial under Rule 59. The district court denied both of these post-trial motions. Summey, raising numerous arguments, appeals the denial of these motions. We affirm the district court's denial of the two posttrial motions.
 
 II.
 
 9
 At trial, Summey tried to introduce into evidence the sale contracts for purchases of the individual condominium units. Summey used several different contract forms, which contained provisions that limited Summey's warranties. Neither the Master Deed nor any of the deeds to the individual condominium units contained a provision limiting Summey's warranties. Because of the limitation of warranties provisions, the introduction of these sale contracts was crucial to Summey's defense against the Association's claim for breach of implied warranty of fitness for intended use. The district court, however, excluded the sale contracts on grounds that the provisions in the sale contracts had merged into the subsequently-executed deeds and thus were no longer operative. As an alternative ground, the district court excluded the sale contracts because Summey had not produced them during discovery. In denying Summey's motion for a new trial, the district court reiterated that the sale contracts were inadmissible under the merger doctrine.
 
 
 10
 Although we normally review decisions regarding admissibility of evidence under an abuse of discretion standard, we review de novo the legal analysis underlying these decisions. See H & W Indus., Inc. v. Occidental Chem. Corp., 911 F.2d 1118, 1121 (5th Cir.1990); cf. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir.1984) ("[T]he clearly erroneous rule [does not] protect findings which have been made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards...."). Because the background facts regarding the sale contracts were largely undisputed, the district court's decision to exclude the sale contracts turned solely on its understanding and application of the merger doctrine. Thus, the determination to exclude the sale contracts was either a question of law or a mixed question of law and fact; in either case, we review the decision to exclude de novo.[1]
 
 
 11
 The merger doctrine is a long-standing rule providing that the provisions in a contract for sale of real property are merged into a subsequently-executed deed. "The doctrine of merger is founded upon the privilege, which parties always possess, of changing their contract obligations by further agreements prior to performance. The execution, delivery, and acceptance of a deed varying from the terms of the antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed." Wilson v. Landstrom, 315 S.E.2d 130, 132-33 (S.C. Ct.App.1984) (quoting Charleston & W. Carolina Ry. v. Joyce, 99 S.E.2d 187, 193 (S.C.1957)). Once the parties execute the deed, "the written or oral agreement to convey is merged in the deed, the agreement to convey is discharged ..., the deed regulates the rights and liabilities of the parties, and evidence of contemporane ous or antecedent agreements between the parties is inadmissible to vary or contradict the terms of the deed." Charleston & W. Carolina Ry., 99 S.E.2d at 193.
 
 
 12
 Traditionally, the merger doctrine operated to enforce the rule of caveat emptor in the sale of real estate. See Lane v. Trenholm Building Co., 229 S.E.2d 728, 729 (S.C.1976). Thus, even if the sale of a home by the builder gave rise to an implied warranty of fitness for intended use, the execution of the deed would cancel the implied warranty because, under the merger doctrine, the warranties in the contract for sale merged into the deed. See id. In Rutledge v. Dodenhoff, 175 S.E.2d 792, 795 (S.C.1970), the South Carolina Supreme Court, following a modern trend, held that when a new house is sold by a builder-vendor there exists an implied warranty of fitness that survives the delivery of the deed.[2] As the South Carolina Supreme Court explained in a later case:
 
 
 13
 Rutledge ... held that the law of caveat emptor, traditionally applied to defeat implied warranties in the sale of real estate by operation of a rule that all warranties in a contract for sale merge into the deed, should not govern the sale of a new house by a builder-vendor.
 
 
 14
 * * *
 
 
 15
 Rutledge ... recognized the essence of the transaction is the sale of a house and not a transfer of a parcel of land. A house is the sale of a product, similar to the sale of personalty. Once the court recognizes the essence of the transaction is the sale of a product with a clearly defined proposed use, there is little reason to apply ancient doctrines of real property law which are inconsistent with the current and historical treatment of sales of personalty in this State.
 
 
 16
 The doctrine of merger of warranties in a deed, applicable to real estate sales, has little relevancy to the sale of a product, whether it is personalty or a building. Lane v. Trenholm Bldg. Co., 229 S.E.2d 728, 729-30 (S.C.1976) (emphasis added).
 
 
 17
 Relying on Lane, Summey claims that the waivers of implied warranties contained in the sale contracts survive the delivery of the deeds because the merger doctrine does not apply to the sale of a building. The implied warranty of fitness exists at the time of the sales contract. Id. at 729 ("when a new building is sold there is an implied warranty of fitness for its intended use which springs from the sale itself"). According to Summey, therefore, the fact that the implied warranty survives the delivery of the deed demonstrates that the merger doctrine does not apply. Summey concludes that if an implied warranty survives the delivery of the deed, then a disclaimer of that implied warranty in the sales contract also survives the delivery of the deed.
 
 
 18
 Summey, however, mischaracterizes South Carolina law. The South Carolina Supreme Court did not abandon the merger doctrine in Rutledge and Lane. It simply held that the implied warranty of fitness survives delivery of the deed in the sale of a new building. As the same court explained more recently: "We recognized that a builder-vendor of a new house gives his purchaser an implied warranty of fitness in Rutledge .... The result of this holding was to establish this implied warranty as an independent covenant which survives delivery of the deed. To this extent, Rutledge abrogated the doctrine of merger by deed." Kennedy v. Columbia Lumber & Mfg. Co., 384 S.E.2d 730, 735 (S.C.1989). The implied warranty survives the merger doctrine to protect innocent purchasers and to prevent builders from placing defective and inferior construction into the stream of commerce. Id. at 736. These reasons do not apply to disclaimers of implied warranties, which sellers use to limit liability. Unlike the implied warranty, which arises automatically by operation of law, a waiver of an implied warranty is an affirmative contractual provision. If the deed does not include the waiver of the implied warranty, a court should assume that the parties modified their agreement as to the seller's liability, and it should nullify the waiver provision under the merger doctrine.
 
 
 19
 Summey included a disclaimer of implied warranties in the sale contracts but did not include a disclaimer in the Master Deed or any of the deeds for the individual units. Because the doctrine of merger applies under South Carolina law, we conclude that the trial court correctly excluded the sale contracts from evidence.[3]
 
 III.
 
 20
 Summey also argues on appeal that the Association lacks standing to bring a claim for breach of implied warranty of fitness.[4] Summey argues that the Association lacks standing because its implied warranty claim requires the participation of the individual unit owners.
 
 
 21
 The United States Supreme Court has established the following test to determine when an association has standing to bring a representational claim on behalf of its members:
 
 
 22
 (1) its members would otherwise have standing to sue in their own right;
 
 
 23
 (2) the interests it seeks to protect are germane to the organization's purposes; and,
 
 
 24
 (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 25
 Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). Summey does not dispute that the Association meets the first two elements of the Hunt test. Each condominium owner, as part-owner of the parking deck, could bring an action for breach of implied warranty of fitness. Furthermore, one of the express purposes of the Association is to maintain, repair, and replace the common elements of the Tower South Regime; seeking damages for the defective construction of the parking deck is germane to the Association's powers and duties with respect to the common elements.
 
 
 26
 Summey argues, however, that the Association cannot meet the third element of the Hunt test because the implied warranty claim requires the participation of the individual unit owners. Summey could not have breached an implied warranty of fitness with respect to any purchaser who inspected the parking deck and knew about any construction defect before purchasing the condominium unit. For this reason, Summey argues that the knowledge and expectations of each individual purchaser at the time of his or her purchase are critical to the breach of implied warranty claim. Therefore, the participation of the individual unit owners is necessary to establish whether the individual purchasers examined the parking deck before they purchased the condominiums. See Spring Mill Townhomes v. Osla Fin. Servs., Inc., 465 N.E.2d 490, 493 (Ill.App.Ct.1983) (holding that a homeowners' association did not have standing to bring an action for breach of an implied warranty of habitability, in part, because individual participation would have been necessary).[5]
 
 
 27
 However, we reject Summey's challenge to standing as untimely. The South Carolina Supreme Court has held that "where lack of capacity to sue is not timely raised by demurrer or answer, it is waived." H & H Glass Co. v. Wynne, 346 S.E.2d 523, 524 (S.C.1986); see also S.C.Code Ann. Sec. 15-13-370; Chet Adams Co. v. James F. Pedersen Co., 413 S.E.2d 827, 829 (S.C.1992). In its Answer to First Cause of Action, Summey did not assert lack of standing as an affirmative defense. Joint Appendix ("J.A.") 18-20. Furthermore, Summey did not raise lack of standing in its answer to paragraph one of the Association's complaint, which asserted jurisdiction in the Court of Common Pleas, Horry County, South Carolina; Summey's only objection to jurisdiction was that the case should be removed to federal court based on diversity jurisdiction. J.A. 16; see H & H Glass, 346 S.E.2d at 525 (concluding that the defendant, by admitting jurisdiction in its answer, implicitly admitted the plaintiff's capacity to sue). Summey did not even raise lack of standing in a pretrial motion. Therefore, Summey has waived its right to contest standing and cannot raise it on appeal.
 
 
 28
 The fact that Summey failed to raise the lack of standing argument in a timely fashion is more than a mere technical error. Because Summey never raised standing below, the district court never determined whether the testimony of the individual condominium purchasers was necessary. If the district court had considered the question, it might have found that the purchasers could not have discovered the construction defects in the parking deck without destructive investigation, and therefore that the testimony of the individual purchasers was not required for the breach of implied warranty claim.
 
 
 29
 The jury decided the substantive question of whether the Association proved a claim for breach of an implied warranty of fitness for intended use. In its instructions to the jury, the district court explained that:
 
 
 30
 If you find the individual purchasers did examine the parking deck to the full extent they desired to do so, and that during such examination, the defects complained of in this case, if any defects existed, were viewed, or should have been viewed by such purchasers, you may find that the implied warranty that the parking deck was free from major structural defects does not extend to the defects complained of in this case. Such exception to the application of an implied warranty, however, does not apply to latent defects. Latent defects are defined as hidden conditions not discoverable on a reasonable examination of the property. In other words, if the purchasers could not have discovered the defects complained of in this case upon a reasonable examination of the property, they cannot be found to have waived the implied warranty simply because they inspected or had an opportunity to inspect the parking deck.
 
 
 31
 J.A. 402-03 (emphasis added). The jury had the opportunity to find that the individual purchasers knew or should have known about the defects in the parking deck, or to find that the purchasers could not possibly have known about the defects. The jury nonetheless found Summey liable for breach of the implied warranty of fitness.
 
 
 32
 We conclude that Summey cannot claim lack of standing to disturb the jury's verdict this late in the game. Defendants should use the doctrine of standing to dismiss cases at their inception when brought by an improper party. Summey, having gone to trial and having lost on the substantive issue, cannot now claim that the Association had no standing to bring an action for breach of the implied warranty of fitness.
 
 IV.
 
 33
 Summey next argues that the district court should have granted judgment notwithstanding the verdict in Summey's favor on the breach of contract claim because there was no contract between Summey and the Association. According to the Association, Summey breached its contract with the Association by failing to construct, submit, and maintain the parking deck as represented in the Master Deed. Summey filed architectural drawings specifying that the parking deck would contain a waterproof membrane; the Master Deed incorporated these architectural drawings by reference. The Association claimed that Summey breached its contractual promise by building a parking deck without a waterproof membrane.
 
 
 34
 Summey counters that the breach of contract claim must fail because the Master Deed did not establish a contract between Summey and the Association for two reasons. First, Summey argues that there was no contractual agreement between Summey and the Association to build a waterproof parking deck. The parking deck, in fact, was completed before the Association was formed. Although Summey filed the Master Deed incorporating the architectural plans in order to comply with statutory requirements, that filing did not constitute an offer that the Association accepted upon its creation. Furthermore, Summey argues that it received no consideration for its obligation to build a waterproof deck.
 
 
 35
 We reject Summey's analysis of this contractual relationship. After the completion of construction, Summey sought to divest itself of the burdens of maintaining ownership. It transferred, and the Association accepted, the responsibilities and liabilities of the common elements. The vehicle for this transfer of responsibilities and liabilities was the Master Deed, which provides that the common elements transferred to the Tower South Regime were built in accordance with the filed plans. Thus, the transfer between Summey and the Association constituted the offer, acceptance, and consideration of the contractual relationship between the parties.
 
 
 36
 Summey's second argument against the breach of contract claim requires us to construe the language of the Master Deed. Summey argues that the representation in the architectural drawings did not create a contractual obligation to build a waterproof parking deck. Summey filed the architectural drawings to comply with a provision of the South Carolina Horizontal Property Act, which requires the developer to file a plan of the proposed construction that shows the "dimension, area, and location" of the common elements. Furthermore, the Master Deed references the architectural plans "showing the location of all buildings and other improvements, ... and the dimensions, area and location of the [common elements]." J.A. 485. Although the Master Deed does not state that the plans were incorporated only to show the location, dimensions, and area of the buildings and elements, Summey argues that the plans should be used only for those limited purposes.
 
 
 37
 We reject Summey's argument. First, Summey mischaracterizes the requirements of the South Carolina Horizontal Property Act (the "Act"). The Act requires the developer to file, along with the Master Deed:
 
 
 38
 a plot plan of the proposed construction showing the location of the building and other improvements, and a set of floor plans of the building which must show graphically the dimensions, area, and location of each apartment therein and the dimension, area, and location of common elements affording access to each apartment. Other common elements, both limited and general, must be shown graphically insofar as possible and must be described in detail in words and figures.
 
 
 39
 S.C.Code Ann. Sec. 27-31-110 (emphasis added). Thus, the Act clearly requires the plans filed with the Master Deed to contain a detailed description in words and figures of the parking deck, including the specification that the deck contain a waterproof membrane.
 
 
 40
 Second, the language of the Master Deed does not expressly provide that it incorporates the architectural plans only to show the dimensions, area, and location of the common elements. At most, Summey demonstrates that the language of the Master Deed is ambig uous with respect to its incorporation by reference of the architectural drawings. On a motion for judgment as a matter of law under Rule 50(b), a court must view the evidence in the light most favorable to the party opposing the motion. United States v. Tobias, 899 F.2d 1375, 1378 (4th Cir.1990). Summey had an opportunity to convince the jury that Master Deed does not incorporate the specification that the parking deck contain a waterproof membrane, but the jury found Summey liable for breach of contract. We agree with the district court that, given the language of the Master Deed, a jury could reasonably have found for the Association on the breach of contract claim.[6]
 
 V.
 
 41
 Summey raises four other arguments, which we can dispose of more summarily.
 
 A.
 
 42
 Summey challenges the jury's finding of liability for negligent construction of the parking deck. Summey makes two arguments. First, it argues that it did not construct the parking deck. As merely the developer, it contracted with R. N. Rouse & Co. ("Rouse"), who actually constructed the deck. Second, Summey argues that it cannot be held responsible for Rouse's negligent construction because Rouse was not Summey's agent. Even though Summey supervised the construction of the condominium project by maintaining an on-site representative, that supervision does not create a principal-agent relationship. See Chatman v. Johnny J. Jones Exposition, Inc., 47 S.E.2d 302, 304-05 (S.C.1948).
 
 
 43
 On a motion for judgment as a matter of law, a court must review the evidence in the light most favorable to the non-moving party. Tobias, 899 F.2d at 1378. Taken in the light most favorable to the Association, the evidence demonstrates that Summey retained a high degree of supervision and control of the construction of Tower South. Summey maintained an on-site representative who actively participated in construction decisions, including the decision to remove the waterproof membrane from the parking deck. Thus, a jury could have found Summey liable not as the principal of Rouse, but for its own negligent participation in the construction of the condominium project and the parking deck.
 
 B.
 
 44
 Summey challenges the amount of the damage award because it double-counted the cost of the repairs of the planter boxes. Edison Ezekiel, a structural engineer retained by the Association, testified that the repairs to enhance the structural integrity of the parking deck in order to bring it up to the required H-20 load standards would cost $74,992, including $19,992 for repair and replacement of the planter boxes. A waterproofing expert, Charles Strickland, also testified on the damages issue. His estimates included work on the planter boxes but did not specify the amount that applied to the planter boxes. The jury apparently awarded damages totalling the sum of the two experts' estimates. Summey argues that, because both experts included in their estimates the cost of repairing the planter boxes, the jury awarded excessive damages.
 
 
 45
 When considering a motion for a new trial under Rule 59:
 
 
 46
 a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial.
 
 
 47
 Poynter by Poynter v. Ratcliff, 874 F.2d 219, 223 (4th Cir.1989). We review the district court's ruling on the motion for a new trial under an abuse of discretion standard. See id. The district court allowed the jury to determine whether Strickland's estimate included repairs to the planter boxes that Ezekiel's estimate had also included. The jury could have found that the experts' testimony included two estimates for the same work and deducted $19,992 from the damages award.
 
 
 48
 The jury, however, did not do so. In denying the motion for a new trial, the district court apparently reviewed the evidence and concluded that the damages award was not against the clear weight of the evidence, was not based on false evidence, and did not result in a miscarriage of justice. We find that the district court did not abuse its discretion in reaching this conclusion.
 
 C.
 
 49
 Summey argues that the attorney for the Association, in his closing argument, tainted the jury by improperly representing that the parking deck was about to fall. Upon Summey's objection, the district judge instructed the jury that it should consider speculation as to whether the parking deck might fall only as it related to the issue of the proper construction of the parking deck but not for damages. Summey argues that the Association's attorney further tainted the jury during closing argument by representing that Summey made a $21 million profit on the condominium project, although no evidence admitted before the jury supported the statement.
 
 
 50
 When it considered the motion for new trial, the district court recalled that Summey had objected to these statements during the Association's closing argument, and that the district court had sustained Summey's objections and issued curing instructions. The district court concluded that, to the extent that its instructions to the jury did not cure the impropriety of the Association's statements, the impropriety did not require or justify a new trial. We find that the district court did not abuse its discretion in reaching this conclusion.
 
 D.
 
 51
 Finally, Summey contends that the Association was contributorily negligent because the Association allegedly failed to maintain the parking deck despite its duty to maintain the common elements under Article XX of the Master Deed. The failure to maintain the parking deck, Summey argues, contributed to the structural defects of the deck.
 
 
 52
 We conclude that the district court did not abuse its discretion in rejecting this argument. The Association's causes of action arise from construction defects that existed upon completion of the parking deck in 1987. Summey did not relinquish control of the Association until 1989. Thus, any claim regarding the Association's failure to maintain the parking deck is irrelevant to the Association's causes of action.
 
 VI.
 
 53
 For the foregoing reasons, we conclude that the district court correctly denied Summey's motions for judgment notwithstanding the verdict and for a new trial. Accordingly, we affirm the decision of the district court.
 
 
 54
 AFFIRMED.
 
 
 
 [1]
 De novo review is appropriate even though we review the decision to exclude the sale contracts in the context of a motion for a new trial. As a general rule, the standard for appellate review of a district court's decision whether to grant a Rule 59 motion for a new trial is abuse of discretion. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989); Defender Indus., Inc. v. Northwestern Mutual Life Ins. Co., 938 F.2d 502, 507 (4th Cir.1991). When the district court's ruling hinges on its view of a question of law, however, its decision is subject to de novo review. Munn v. Algee, 924 F.2d 568, 575 (5th Cir.), cert. denied, 502 U.S. 900 (1991)
 
 
 [2]
 In other words, the builder-vendor warrants "that the house was built in a reasonably workmanlike manner and is reasonably suitable for habitation." 175 S.E.2d at 795
 
 
 [3]
 As an alternative ground, the trial court excluded the contracts of sale because Summey did not produce these documents before the close of discovery. Because we hold that the district court correctly excluded the sale contracts under the merger doctrine, we need not reach this issue
 
 
 [4]
 We note that Summey does not challenge the Association's standing to bring the breach of contract or negligent construction claims. The South Carolina Supreme Court has held that a property owners' association has standing to bring an action for construction defects in common elements that it has a duty to maintain, even if the association does not own those common elements. Queen's Grant Villas Horizontal Property Regimes I-V v. Daniel Int'l Corp., 335 S.E.2d 365, 366 (S.C.1985); Roundtree Villas Ass'n v. 4701 Kings Corp., 321 S.E.2d 46, 50 (S.C.1984). Although the Master Deed in Article XI vests ownership of the common elements in the individual unit owners, the Association has a duty to maintain the common elements under Article XX of the Master Deed. Thus, the Association, as a general rule, has standing to sue for the defective parking deck; Summey's standing argument on this appeal relates only to the Association's claim for breach of implied warranty of fitness
 Furthermore, the Association has standing even though it lacks contractual privity with Summey. The South Carolina Supreme Court has held that an association can maintain an action for a breach of an implied warranty, even where no contractual privity exists between the association and the defendant. See Beachwalk Villas Condominium Ass'n v. Martin, 406 S.E.2d 372, 374 (S.C.1991).
 
 
 [5]
 We decline to follow Spring Mill Townhomes, a case to which Summey cites. The case before us is governed by South Carolina law, not Illinois law. Under Illinois law, an association establishes standing by showing that "it has suffered an injury in its individual capacity to a substantive legally protected interest." 465 N.E.2d at 492. In Spring Mill Townhomes, the association did not have standing to bring an action for breach of the implied warranty of habitability with respect to defects in the townhome roofs because the association neither held title to the townhome roofs nor had the authority to maintain the roofs for damage other than ordinary wear and tear. Id. at 493. The Illinois court, recognizing that the federal rule for associational standing (embodied in Hunt ) is more expansive than the Illinois rule, discussed only as a secondary argument the necessity of the individual owners' participation. Id. Although there is no South Carolina case on this point, we doubt that a South Carolina court would take so restrictive a view
 
 
 [6]
 We note also that Summey drafted the Master Deed, and any ambiguity in the language of the Master Deed should be construed against Summey. Parker v. Byrd, 420 S.E.2d 850, 853 (S.C.1992) ("Our cases have long held that ambiguities must be construed against the party who prepared the contract.")